## Northumberland County v.
## West End National Bank (No. 1)

*Sanford S. Marateck*, for plaintiff and for additional defendants.

*Jack C. Younkin* and *Matthew M. Stricker*, of *Ballard, Spahr, Andrews & Ingersoll*, for defendant.

KIVKO, *P. J.*, October 7, 1975—The County of Northumberland ("county") has instituted this action in assumpsit against The West End National Bank of Shamokin ("bank") to recover $56,382.02 allegedly paid over by the bank during a three and a half year period to Robert G. Perles, a bookkeeper-

employe of the county, upon presentment by Perles of checks owned by the county, bearing in some fashion the legend "Northumberland County Home and Hospital." Thereafter, the payments were allegedly appropriated by Perles for his own use. By answer, the bank has denied these allegations and in new matter has raised the defenses of fraud and estoppel, based on certain conduct of the county's officers and employes the bar of the statute of limitations and payment in that the county has been wholly or partly reimbursed by sureties of Perles and his immediate supervisor, George Conbeer.

In addition to an answer with new matter, the bank has filed a complaint joining as additional defendants certain officials and employes of the county and their respective sureties. It is not necessary for the purposes of this opinion to summarize the bank's allegations against all the additional defendants. However, among the bonding companies so joined are Travelers Indemnity Company ("Travelers") and United States Fidelity and Guaranty Company ("U. S. F. & G."), who issued surety bonds for Perles and Conbeer. At this time, we have before us for disposition the bonding companies' identical preliminary objections to the bank's complaint.

Defendant bank's complaint avers with respect to Travelers and U. S. F. & G. that they "have issued surety bonds upon the faithful discharge by Perles and Conbeer, their deputies, clerks, assistants and appointees of all trusts confided in them by virtue of their offices . . . (and) if plaintiff has suffered any loss or damage as is alleged in its Complaint, such loss or damage was caused by the failure of Perles and Conbeer to faithfully perform their trusts as

alleged above, with the result that Travelers Indemnity and Fidelity and Guaranty are liable to plaintiff for such damages under their surety bonds, or if defendant (Bank) is liable to plaintiff (which liability is expressly denied) Travelers Indemnity and Fidelity and Guaranty are for the same reason, liable to defendant (Bank)." In other words, the bank claims that the sureties for Perles and Conbeer, by reason of their surety obligation, are solely, or jointly or severally liable to the county, or, alternatively, if the bank is found liable, then the bank could recover in this action against these sureties upon that obligation.

Of course, preliminary objections in the nature of a demurrer admit as true all well-pleaded material facts set forth in the complaint, including all inferences reasonably deducible therefrom, but not the pleader's conclusions of law. The question becomes whether, upon the facts averred, the law says with certainty that no recovery is permitted: Reardon v. Wilbur, 441 Pa. 551, 554, 272 A. 2d 888 (1971); Clevenstein v. Rizzuto, 439 Pa. 397, 400-01, 266 A. 2d 623 (1970).

The obligation of Travelers and U. S. F. & G. on their surety bonds for Perles and Conbeer is controlled by statute. The bonds were issued pursuant to section 429 of the County Code of August 9, 1955, P.L. 323, 16 P.S. §429, which provides that: "The deputies and other appointees in each county office, who are required to receive, account for, or hold any money by virtue of their office or employment, shall give and acknowledge a single bond covering all such deputies and appointees payable to the officer in whose office they are employed. . . . Each such bond shall be conditioned for the faithful accounting and payment, according to law, of all

money received by each deputy and appointee bonded, and shall be taken in the name of the county officer in whose office they are employed, and shall be for the use of that officer, the county and of the Commonwealth, and for the use of such other party or parties for whom he shall collect or receive money as the interest of each shall appear in case of a breach of the conditions thereof . . ."

The bank contends that it is an obligee under these bonds, and that, therefore, if it should be found liable to plaintiff, the sureties would be liable over to it.

The obligees of the bond are limited to "the officer, the county and Commonwealth and . . . such other party or parties *for whom* he shall collect or receive money as the interest of each shall appear in case of a breach of the conditions of the bond." (Emphasis supplied.) Perles, the principal in the bond, was plaintiff's employe. The money he is alleged to have taken and converted to his own use he collected and received for and in behalf of plaintiff. The pleadings allege that Perles took the money from the bank, not that he took it for or on behalf of the bank.

The bank contends, however, that the legislative purpose was to provide the same coverage under these bonds as is allowed under bonds issued for county officers by section 422 of the same act and section 422 of the Second Class County Code of July 28, 1953, P.L. 723, 16 P.S. §3422. These statutes provide that: "Each official bond shall be taken in the name of the county, and shall be for the use of the county and the Commonwealth and for the use of such other person or persons for whom money shall be collected or received, or as his or her interest shall otherwise appear, in case of a breach of

any of the conditions thereof by the acts or neglect of the principal on the bond."

According to the bank, the only difference between section 422 and section 429 is the omission of the word "or" in the latter. Rather than accept the language of section 429 as it appears, namely, that the bonds are for the use of "that officer [in whose office the deputies and other appointees are employed], the county and of the Commonwealth, and for the use of such other party or parties for whom he shall collect or receive money as the interest of each shall appear. . . ," the bank argues that this latter phrase should read "and for the use of such other party or parties for whom he shall collect or receive money, *or* as the interest of each shall appear."

We cannot agree. When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit: Statutory Construction Act of December 6, 1972, P.L. 966 (No. 290), sec. 1921, 1 Pa.C.S. §1921.

Furthermore, we cannot accept the premise of the bank's argument. The distinct purposes of the statutes, their background, as well as their plain language do not permit sections 429 and 422 to be read in the same way so as to create identical classes of obligees.

Section 429, which was enacted as part of the 1955 complete recodification and amendment of the County Code, supra, specifically applied to deputies and other appointees in each county office who handled money by virtue of their employment. Because of this responsibility, a bond was required of each office conditioned on the faithful accounting and payment of all moneys received by the

bonded parties, and as indicated earlier, was for the use of the officer in whose office they were employed, the county, the Commonwealth and any other persons "for whom he shall collect or receive money as the interest of each shall appear." The foregoing language, specifying what "other" parties may be obligees under the bond, is identical to that found in section 422's predecessor, as it appeared in the 1929 original codification of the County Code, Act of May 2, 1929, P.L. 1278 (No. 446), sec. 54. But when section 422 was reenacted in the 1955 Code, the phrase in question was written: "for whom money shall be collected or received, *or* as *his or her* interest shall *otherwise* appear." (Emphasis supplied.)

This language of section 422, creating a potentially broader class of obligees than section 429, is fully understandable when viewed in the light of its relationship to sections 420 and 421 which it implements. The bonds under section 422, generally known as "official bonds" are required of certain public officials named in section 420 before they may enter upon their official duties and are conditioned generally under section 421 on terms far more extensive than those imposed on deputies and bonded appointees through bonds required under section 429. Furthermore, section 421 imposes certain specific additional conditions in the bonds of some of the public officials not required of the others.

The difference between these provisions is more than the omission of one word "or." In addition to the distinctly different conditions of these bonds, some significance must be attributed to the term "otherwise," appearing in the phrase at issue in section 422. The phrase reads: "*or* as his or interest

shall *otherwise* appear." We cannot attribute the failure to include in section 429 such meaningful language inserted in section 422 in a rewriting of the code in 1955 to a legislative draftsman's oversight.

Moreover, we cannot disregard the Pennsylvania Supreme Court's interpretation of identical language in the prior provision, section 54, supra, set forth in Commonwealth, to the use of Orris v. Roberts, 392 Pa. 572, 141 A. 2d 393 (1958). The use-plaintiff in that case had turned over a judgment note to the prothonotary's office, but because it was improperly indexed by one of the clerks, it became uncollectible. Thereupon, suit was brought on the prothonotary's official bond, given under the statutory language of section 54. As pointed out earlier, the pertinent phrases from that provision are now found in section 429. Denying the right of the use-plaintiff to proceed against the bond, the court stated: "[B]y the express terms of the bond an action could be brought for the plaintiff only in case he was a party for whom the prothonotary had collected or received money. . . . Thus, by the bond's express terms, private individuals are not protected by it unless money has been paid to the prothonotary for their account or benefit. . . . The present plaintiff is not within the category of designated beneficiaries under the bond". id. at 589. This reasoning likewise precludes the bank from claiming obligee status under section 429.

In view of our determination that the plain language of section 429 controls, it is unnecessary for us to assess the validity of the bank's assumption that, under the circumstances alleged, it would have been an obligee as contemplated by the language of section 422. Neither do we mean to infer

that, if the bank were deemed to come within the general term of "obligee," it would, under the circumstances alleged, have a right to join Travelers and U. S. F. & G. as additional defendants on the theory of joint liability with defendant or liability over to the defendant. These matters are not before us.

As for any common-law action premised on the sureties' liability over to the bank if the county is successful in its action against the bank, it is clear that since the bank and the sureties are not in the same class of obligors, no right of subrogation would accrue in favor of the bank, a party primarily liable, against the sureties, which are parties secondarily liable: Commonwealth v. American Surety Co., 112 Pa. Superior Ct. 270, 170 Atl. 305 (1934). In that case, the court upheld the demurrer of defendant-surety of a defaulting county commissioner in an action for reimbursement brought by the other two county commissioners who had paid off in full a surcharge against the three of them. It was aptly explained that "in a situation such as here present (i.e. where the litigants are not in the same class), subrogation may be successfully invoked only by one, who being secondarily liable, has paid to the creditor the debt due from a principal debtor. Such a one is entitled to use all the rights and remedies which the creditor himself might have employed against the principal debtor, including the right to sue, not in his own right but by succession to the rights of the creditor, upon an obligation given to the creditor and to which the person entitled to subrogation is not a party. . . . The defendant [surety] never was in the same class of obligors as were the commissioners. Hence, the denial to appellants [commissioners] of the right to

proceed against the surety company on the bond is not, strictly, a denial of subrogation, but is merely saying the right to subrogation does not accrue in favor of parties primarily liable against a party secondarily liable.": id. at 275-76.

Thus, the bank in the case at bar, in the event it is found liable to the county, would be unable to step into the county's shoes under subrogation principles to proceed against these sureties. As in American Surety, the converse situation is present here, in which the right of subrogation is unavailable to a party primarily liable.

The bank, therefore, is foreclosed from any recovery in this action against Travelers and U. S. F. & G., either under the statutory bonds in question, or by way of subrogation. The demurrer as to the bank's averments of their liability over to it must be sustained.

There remain the questions of the validity of their being joined as additional defendants on the theory of their sole, several or joint liability to the county. The bank alleges that the sureties are "liable to plaintiff for such damages under their surety bonds," for the reason that any loss to the county was caused by the failure of the principals under the bonds (Perles and Conbeer) to perform their trusts as employes.

Such an allegation may state a valid claim which the county may assert against the sureties but it does not state a cause of action on which the joint liability of the bank and the sureties may be predicated. The action against the bank alleges a breach of the bank's duties to the county arising out of their relationship, to wit: checks which on their face indicate that they are the property of the county were improperly cashed and paid over to an unau-

thorized employe (Perles) upon presentment. On the other hand, any liability of the sureties to the county is, as alleged in the bank's complaint, based strictly on the statutory bonds they have issued. Their obligation is both a contractual and statutory one, enforceable by an entitled obligee. See Restatement, Security, §§82 and 130 (1941). The two claims if made by the county would be on totally different obligations, unrelated in substance. For this, as well as for other reasons stated in the discussion of the liability over theory, the demurrer to the allegation of the sureties' joint liability with the bank must be sustained.

The difference in the type of obligation alleged in plaintiff's complaint to be owed by the bank to the county and the type of obligation alleged in defendant's complaint to be owed by the sureties to the county rules out any right of the bank to bring the sureties in as additional defendants as jointly, severally or solely liable to the county on another ground, that of misjoinder of a cause of action, Pa.R.C.P. 1017(b)(5). Although the preliminary objections filed by the sureties do not include a petition raising the defense of misjoinder, the procedural oversight does not bar us from considering its possible application here. "The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." Pa.R.C.P. 126. Since the obvious intention of Travelers and U. S. F. & G.'s preliminary objections in the nature of a demurrer were to question the bank's ability to bring them into this action, we will

not delay the matter, but will treat the issue of the propriety of joinder on the above basis as being properly before us.

Originally, Pa.R.C.P. 2252(a), governing joinder of additional defendants, read: "In any action the defendant or any additional defendant may file, as of course, a praecipe for a writ, or a complaint, to join as an additional defendant any person not a party to the action who may be alone liable or liable over to him on the cause of action declared upon or jointly or severally liable thereon with him." In 1969, by amendment the following was added: ". . . or who may be liable to the joining party on any cause of action which he may have against the joined party arising out of the transaction or occurrence or series of transactions or occurrences upon which the plaintiff's cause of action is based."

This latter provision expanded the scope of joinder of an additional defendant, but only with respect to independent causes of action *defendant* may have against the party sought to be joined. "The amendment now also permits joinder if the additional defendant is or may be liable to the joining party on a cause of action arising out of the transaction or occurrence upon which the plaintiff's cause of action is based." Schladensky v. Ellis, 442 Pa. 471, 275 A. 2d 663 (1971). The change in the rule has no bearing on the determination of whether an additional defendant may be joined as being liable to *plaintiff*. See, e.g., Katz v. Schuster, 58 Erie 172, 176 (1975).

In this regard, under the applicable language of Rule 2252(a), the cause of action on which the original defendant may bring in an additional defendant must still be the cause of action declared on by plaintiff in the action against the original defend-

ant: Schladensky v. Ellis, supra; Steele v. Sheppard, 402 Pa. 33, 165 A. 2d 666 (1960); Land Title Bank & Trust Co. v. Cheltenham National Bank, 362 Pa. 30, 66 A. 2d 768 (1949). The Supreme Court in Schladensky v. Ellis, supra, page 475, construed the phrase "cause of action declared on by the plaintiff" to require that the two causes of action "be related in substance to the complaint pled by plaintiff and arise out of the same factual background." American Metal Fabricators Company v. Goldman, 227 Pa. Superior Ct. 284, 288, 323 A. 2d 891 (1974).

It is the cause of action actually declared upon that controls joinder based upon plaintiff's cause of action, not another cause of action which plaintiff might have declared upon. Cf. Altoona Central Bank and Trust Co. v. American Casualty Co., 415 Pa. 39, 202 A. 2d 29 (1964). "Joinder cannot be justified on the basis that the plaintiff possesses a separate cause of action against the additional defendant arising out of a separate transaction." Katz v. Schuster, supra. The bank has nothing to do with the suretyship relationship in existence between Travelers, U. S. F. & G., Perles, Conbeer and certain obligees statutorily designated, of which the county is one. In Josal, Inc. v. Rolling Park Homes, Inc., 195 Pa. Superior Ct. 646, 171 A. 2d 630 (1961), the court, after finding no grounds for liability over between defendant and the additional defendant, also held that because any liability owed to plaintiff by the additional defendant would be on a separate contract between them, to which defendant was a stranger, the additional defendant could not be joined on this basis by defendant.

Travelers and U. S. F. & G., therefore, cannot be joined in this action by the bank predicated upon

any liability these sureties may have on the statutory bonds to the county. Whatever rights the county may have against the sureties, the joinder rules do not confer upon the bank the authority to compel an adjudication of such rights in this action. As to this aspect of the banks' complaint, there has been a misjoinder of a cause of action: Pa.R.C.P. 1017(b)(5).

In summary, (1) because the bank's complaint states no cause of action on which Travelers or U. S. F. & G. may be found liable over to it or jointly liable with it, the preliminary objection in the nature of a demurrer to the bank's joinder of them as additional defendants on the claim of liability over or joint liability is sustained; (2) because of the limitations on joinder in Rule 2252(a), a preliminary objection in the nature of a misjoinder of a cause of action to the bank's joinder of them as additional defendants on the basis of any liability they might have to the county, sole, several or joint, is also sustained.

We, therefore, enter the following orders

## ORDER NO. 1

And now, October 7, 1975, for the reasons set forth above, the complaint of defendant, The West End National Bank of Shamokin, against the additional defendant, Travelers Indemnity Company, is dismissed.

## ORDER NO. 2

And now, October 7, 1975, for the reasons set forth above, the complaint of defendant, The West End National Bank of Shamokin, against the additional defendant, United States Fidelity and Guaranty Company, is dismissed.